UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| KELVIN FRANCIS | : | DOCKET NO. 6:16-cv-197 |
| --- | --- | --- |
| D.O.C. # 588933 | | |
| VERSUS | : | JUDGE HICKS |
| BURL CAIN | : | MAGISTRATE JUDGE KAY |

**REPORT AND RECOMMENDATION**

Before the court is a pro se petition for writ of habeas corpus pursuant to 28 U.S.C § 2254, filed by Kelvin Francis[1] ("petitioner"). The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Burl Cain, former warden, opposes the petition. Doc. 13.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **GRANTED IN PART** and **DENIED IN PART**.

I.
BACKGROUND

*A. Conviction*

The petitioner was indicted on one count of first degree murder, one count of attempted first degree murder, and one count of forcible rape on April 22, 2009, in the Fifteenth Judicial District Court, Acadia Parish, Louisiana. Doc. 13, att. 3, p. 29. The charges related to the rape and

---

[1] The petitioner's first name is provided in various places in the state court record as "Kevin." However, he signs his name as "Kelvin" in the instant petition. Doc. 1, pp. 1, 15; doc. 1, att. 2, p. 1.

murder of Lisa Bonin and shooting of Ryan Snow on April 1, 2009, during a home invasion in which the petitioner was accompanied by Claude Morrison and Ryan Williams. *Id.*; *see State v. Francis*, 2012 WL 4774904, *1–*4 (La. Ct. App. 3d Cir. Oct. 3, 2012). A bench trial commenced on these charges on September 19, 2011, with Snow and Williams testifying for the state and the petitioner testifying on his own behalf. Doc. 13, att. 3, pp. 21–26. At the trial's conclusion, the court found the petitioner guilty as charged on all counts. *Id.* at 25; doc. 13, att. 5, p. 98. He received a mandatory term of life imprisonment for the murder conviction, a term of forty years on the forcible rape conviction, and a term of fifty years on the attempted first degree murder conviction, with all sentences to run concurrently and be served without benefit of probation, parole, or suspension of sentence. Doc. 13, att. 5, pp. 102–03; *see* LA. REV. STAT. § 14:30(C)(2) (establishing mandatory sentence for first degree murder where the district attorney does not seek a capital verdict).

## B. Direct Appeal

The petitioner asserted two assignments of error to the Louisiana Third Circuit Court of Appeal:

1. The trial court violated his rights of confrontation and vigorous cross-examination with respect to Williams' testimony.
2. The trial court erred in refusing to require that the state produce a statement allegedly made by Snow to an assistant district attorney.

Doc. 1, att. 6, pp. 10–15. The court reviewed both claims on the merits and affirmed the petitioner's conviction and sentence. *Francis*, 2012 WL 4774904 at *4–*7. The petitioner then sought review in the Louisiana Supreme Court, which denied same on April 19, 2013. *State ex rel. Francis v.*

*State*, 111 So.3d 1031 (La. 2013). It does not appear that he sought review in the United States Supreme Court.[2] Doc. 1, p. 3.

### C. State Collateral Review

The petitioner filed an application for post-conviction relief in the trial court on or about January 8, 2014, raising the following claims:

1. He was denied effective assistance of counsel when his trial attorney
   a. Failed to move to suppress all items seized in a search on the grounds that the affidavit in support of the warrant application contained false statements.
   b. Misrepresented information that induced the petitioner to waive his right to trial by jury.
   c. Failed to move to quash the forcible rape charge and request that same be amended to sexual battery.
   d. Failed to object to the trial judge announcing the guilty verdict without taking the case under advisement.
2. He is entitled to a new sentencing hearing in compliance with the Supreme Court's verdict in *Miller v. Alabama*, 132 S.Ct. 2455 (2012).

Doc. 1, att. 6, pp. 59–84. The application was denied without hearing. *See id.* at 86. The petitioner then sought review in the Third Circuit, which review was denied. *Id.* at 103. Finally, he sought review in the Louisiana Supreme Court which issued a per curiam opinion on October 9, 2015, denying relief. *Id.* at 116–18.

### D. Federal Habeas Petition

The instant petition was filed on February 11, 2016. Doc. 1. Here the petitioner renews both claims from his state application for post-conviction relief. *Id.* at 5, 7.

---

[2] On the uniform application completed by petitioner, he checks that he did file a petition for certiorari in the United States Supreme Court. Doc. 1, p. 3. However, he provides only the case number and decision date from his Louisiana Supreme Court writ application. *Id.* We can find no record that any petition for certiorari was filed in the United States Supreme Court for this case.

# II.
# LEGAL STANDARDS ON HABEAS REVIEW

## A. Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. *Id.* The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. *Id.* at § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

## B. Exhaustion and Procedural Default

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural

default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

*2. Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default)[3] or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

**C. *General Principles***

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456,

---

[3] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 123 S.Ct. 362, 365 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 125 S.Ct. 847, 851 (2005) (quotations and citations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the

petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 126 S.Ct. 969, 975 (2006).

## III.
### LEGAL ANALYSIS

#### A. Timeliness

Here the Louisiana Supreme Court denied review of the petitioner's direct appeal on April 19, 2013. The petitioner's conviction and sentence became final on July 19, 2013, when his time for seeking review in the United States Supreme Court expired. *See* Sup. Ct. R. 13. Thus **173 days** accrued before he filed his application for post-conviction relief in the trial court on January 8, 2014. The statute of limitations under § 2244(d) was tolled until the Louisiana Supreme Court denied his writ application on October 9, 2015. Accordingly, another **125 days** accrued before the instant petition was filed on February 11, 2016, rendering it timely with **298 days** counted against the one-year limit.

#### B. Exhaustion and Procedural Default

The claims raised in the instant petition were exhausted in the state courts through the petitioner's post-conviction relief process. They were also decided on the merits there. Accordingly, there is no procedural bar and the claims are properly before this court.

#### C. Substantive Analysis

Having determined that all claims are properly before this court, we now review them on the merits under the standards outlined above.

##### 1. Ineffective assistance of counsel

The petitioner first claims that he received ineffective assistance at trial due to errors by defense counsel.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. 104 S.Ct. at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential 'distorting effect of hindsight.'" *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055–56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)). "Both of [Strickland's] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

### a. Failure to file a motion to suppress

The petitioner first alleges that trial counsel erred in not filing a motion to suppress based on his allegation that the affidavit by Detective Broussard, provided in support of his application for a search warrant to obtain a sample of the petitioner's saliva, contained a false statement. Doc. 1, att. 2, pp. 7–8. Specifically, the petitioner contends that Broussard misrepresented a statement made by Ove Wilson, acquaintance of the petitioner and his two accomplices, to police. *Id.* at 8.

Failure by counsel to file motions does not constitute ineffective assistance *per se*. *See Kimmelman v. Morrison*, 106 S.Ct. 2574, 2587 (1986). Instead, a determination of ineffectiveness depends on whether the motion would have been granted if made – otherwise, the petitioner cannot be said to have been prejudiced in satisfaction of *Strickland*'s second prong. *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987). Additionally, the decision to file pre-trial motions "falls squarely within the ambit of trial strategy." *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985) (quoting *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984)). In that regard, the decision is entitled to deference under *Strickland*. Finally, counsel does not perform deficiently by failing to advance a meritless argument. *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006); *see, e.g.*, *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective standard of reasonableness."); *Murray*, 736 F.2d at 283 ("Counsel is not required to engage in the filing of futile motions.")

Louisiana courts hold that minor inaccuracies will not invalidate a search warrant if, with the inaccurate statements excised, there is still sufficient information in the affidavit to support a finding of probable cause. *State v. Morstein*, 404 So.2d 916, 920 (La. 1981). If, however, the misrepresentations were intentionally made, a warrant based on such an affidavit must be quashed

as it constitutes "a fraud upon the courts" and "impermissible overreaching by the government." *State v. Tate*, 203 So.3d 1041 (La. 2016) (quoting *State v. Rey*, 351 So.2d 489, 492 (La. 1977)).

Here the affidavit contains the following relevant statements by Broussard relating information obtained through his interviews of victim Ryan Snow[4] and witness Ove Wilson:

> When asked if he knew any of the suspects, Ryan replied, "Kevin." When asked Kevin who, Ryan replied, "Kevin Francis." Ryan had said that he and Kevin had fought a few days before, along with "C" and "OJ" (identified as Ove Wilson).
>
> Ove Wilson was brought in for question, at which time he stated to investigators, "Man, I told them I wasn't taking no rap for this. I told them [redacted] to take their rap." When asked what he meant by this, Ove stated that he had seen a subject by the name of C.J. (identified as Claude Morrison, Jr.) the morning after the shooting, and that C.J. was in possession of a gun. When Ove asked C.J. if he was gonna return the gun, Ove states that C.J. told him, "Naw, man. My boy says if I kill someone, I can keep the gun." Ove says that he then asked C.J. if he had killed someone, and C.J. responded to him, "Yeah, man. Somebody on 14th by the doughnut shop." When asked if C.J. was the only suspect, Ove replied, "It was Kevin (Kevin Francis), C.J. (Claude Morrison, Jr.) and Ryan (Ryan Williams).["]
>
> Evidence was submitted to the Acadiana Criminalistics Laboratory for analysis. The Crime Lab has requested a reference swab from suspect Kevin Francis for cross-match in DNA. The other two suspects, Ryan Williams and Claude Morrison, voluntarily gave saliva samples for cross-match but Francis had refused during the initial arrest period.

Doc. 1, att. 6, p. 120. The petitioner challenges this affidavit, specifically Wilson's statement about telling the others to "take their rap," based on the transcript of Broussard's interview with Wilson.[5]

Doc. 1, att. 2, p. 8; *see* doc. 1, att. 6, pp. 122–31.

---

[4] Snow was in the house when Francis and his accomplices arrived and remained in the same room as Bonin, the deceased victim, for much of the ordeal. *Francis*, 2012 WL 4774904 at *1. He survived and later identified all three perpetrators from photo lineups. *Id.* at *1–*2.

[5] In his state application, the petitioner also raises additional challenges to the affidavit not briefed in the instant petition. Out of an abundance of caution, we address them here.

First, the petitioner states that the affidavit misled the judge into thinking Snow had seen the petitioner, when Snow had only heard someone call his name and stated that he recognized the name because he attended school with the petitioner. Doc. 1, att. 6, p. 75. The brief statement from the affidavit – that Snow knew the petitioner as one of the perpetrators – is not misleading on this point.

-11-

At the beginning of the transcribed interview, Broussard notes that Wilson was being called back in because his first statement was inaudible. Doc. 1, att. 6, p. 122. In that interview Wilson related the exchange between himself and Claude Morrison, Jr. about Morrison's gun.[6] *Id.* at 123. In that exchange, as told by Wilson, Morrison also identified Williams and Francis as his accomplices. *Id.* When asked what he had said after Morrison told him about the killing, Wilson gave a response that was recorded by the transcriber as inaudible. *Id.* at 125. He then described how he told Morrison's mother about what Morrison had done. *Id.* at 125–26.

Based on the inaudible spots in the transcript and the fact that the statement provided in that affidavit comports with Wilson's later conduct in trying to get Morrison to take responsibility, the petitioner cannot show that it was a misrepresentation on the part of Broussard. Therefore the petitioner shows no basis for challenging the affidavit. Accordingly, he cannot satisfy either of *Strickland*'s prongs based on counsel's failure to file a motion to suppress and thus shows no error to the state court's ruling.

---

In his state application, the petitioner also argues, with a citation to Snow's statement, that Broussard intentionally omitted the fact that Snow and the petitioner had a history of using drugs together and had recently had a drug-related dispute. *Id.* at 77. The petitioner contends that their history impacts Snow's credibility in identifying the petitioner, and that the omission amounts to a misrepresentation on Broussard's part.

As noted above, the affidavit from Broussard does contain the following statement: "Ryan [Snow] had said that he and Kevin had fought a few days before, along with 'C' and 'OJ' (identified as Ove Wilson)." *Id.* at 120. The only transcribed statement relevant to any conflict between the two in the petitioner's attachments is as follows:
    Broussard: You had an altercation with Kelvin Francis earlier, right?
    Snow: Yes, Sir.
*Id.* at 139. There is no reference from Snow's interview to any drug history. Thus the petitioner has not shown that there was any basis for filing a motion to suppress based on a deliberate misrepresentation on the transcript presented. However, even if he could show that another statement was made showing the subject matter of the dispute, this omission does not amount to a deliberate misrepresentation. Given the corroborating statements from Wilson, it is unlikely that Broussard had reason to fear that information about the victim's drug involvement would deprive him of probable cause in this matter. Accordingly, even with sufficient proof that an omission was made, the petitioner still could not show a basis for relief under this claim.

[6] Wilson gives Morrison's last name as Solomon but does not change any other details. *See* doc. 1, att. 6, p. 123. However, the petitioner does not argue that there is any significance to this discrepancy.

### b. *Waiver of right to jury trial*

The petitioner next claims that counsel performed deficiently by persuading him to give up his right to trial by jury based on a presumption that he would receive a reduced sentence if he agreed to a bench trial. He states that trial counsel informed him, after a meeting in chambers, that, because the prosecutor, defense attorney, judge, and petitioner were all African-American, the judge would find the petitioner guilty of a reduced charge of manslaughter and ensure that he received a sentence of no more than twenty-five years. Doc. 1, att. 2, p. 10; *see* doc. 1, att. 6, p. 147. As noted above petitioner was convicted of first degree murder, attempted first degree murder, and forcible rape, and received sentences in excess of twenty-five years. He declares that, when he asked trial counsel what happened to the sentencing cap, counsel answered dismissively and walked away. *Id.* at 147. The petitioner maintains that he would not have waived his right to a jury trial if he had known that the trial judge had made no such representation regarding a reduced charge or sentencing cap. *Id.*

A defendant may waive his Sixth Amendment right to a jury trial through his attorney, provided that the waiver is knowing and intelligent. *Pierre v. Leger*, 495 Fed. App'x 403, 409 (5th Cir. 2012) (citations omitted). At a hearing on March 9, 2011, the petitioner appeared with counsel and stated that he understood his right to a jury trial and wished to waive it. Doc. 13, att. 3, pp. 110–11. There is no testimony from trial counsel or the sentencing judge to support petitioner's claim of any promise made for him to consent to a bench trial. Further petitioner cannot demonstrate that the results of the proceeding would have been any different if the evidence had been presented to a jury.[7] *See, e.g.*, *Dominguez v. Ducote*, 2014 WL 5429460, *10 (E.D. La. Oct.

---

[7] In Fifth Circuit jurisprudence, a structural error does not, by itself, create a presumption of prejudice under *Strickland*, though "the fundamental nature of such rights . . . serves as an important guidepost" in evaluating the reasonableness of the state court's decision. *See Virgil v. Dretke*, 446 F.3d 598, 607 (5th Cir. 2006); *see also Torres v. Thaler*, 395 Fed. App'x 101, 103 (5th Cir. 2010).

24, 2014). Therefore he cannot satisfy *Strickland*'s second prong and so does not demonstrate error in the state court's ruling or a right to federal habeas relief.

### c. Failure to move to quash forcible rape charge

The petitioner next alleges that trial counsel was ineffective for moving to quash the indictment and have the forcible rape charge amended to sexual battery. He does not provide any briefing for this ineffective assistance claim in the instant petition, rendering it abandoned or subject to waiver. *See Lathers v. Cain*, 2011 WL 1793274, *4 (M.D. La. Apr. 7, 2011) (citations omitted). However, out of an abundance of caution, we address the claim through the briefing provided on the state application for post-conviction relief.

The petitioner contends that the charge should have been amended based upon Detective Broussard's account in the search warrant affidavit suggesting that the victim had been penetrated anally with a foreign object. Doc. 1, att. 6, pp. 79–80.

Under Louisiana law, rape is "the act of anal, oral, or vaginal sexual intercourse . . . committed without the person's lawful consent." LA. REV. STAT. § 14:41(A). Emission is not necessary and "any sexual penetration . . . however slight, is sufficient to complete the crime." *Id.* at § 14:41(B). Forcible rape was defined as a "rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim" under certain circumstances, including when the victim is prevented from resisting "by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape."[8] *Id.* at § 14:42.1(A). Sexual battery includes "the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender" when the offender acts without the victim's consent. *Id.* at § 14:43.1(A)(1).

---

[8] That offense is now called second degree rape, though the elements remain the same. LA. REV. STAT. § 14:42.1(C).

The petitioner does not show where in the statutes cited above it is required that the offender use a part of his own body to penetrate the victim in order to commit a rape. The fact that the petitioner penetrated the victim anally with a foreign object using force and/or threats of violence appears sufficient under these statutes to support his charge and conviction of forcible rape. Accordingly, he cannot satisfy either of *Strickland*'s prongs under this claim. He therefore shows no error in the state court's ruling and no right to federal habeas relief.

### *d. Failure to object to trial court not taking case under advisement*

Finally, the petitioner alleges that his trial attorney rendered deficient performance by not objecting when the trial court announced a guilty verdict without taking the case under advisement. He contends, based on articles of the Louisiana Code of Criminal Procedure mentioning the jury's period of retirement/deliberation, and another article stating that certain provisions of that chapter also applied to cases tried without a jury, that the judge was required to retire and deliberate before rendering a verdict in his case.[9] Doc. 1, att. 6, pp. 81–82 (citing LA. C. CR. P. arts. 808, 809, 820).

The petitioner's argument is unavailing. The articles he cites mentioning retirement and deliberation do not mandate these actions. Instead, they set out the manner in which the jury might receive further charges after retiring and the judge's obligation to give the jury a written list of responsive verdicts. LA. C. CR. P. arts. 808, 809. Meanwhile, Article 820 only provides that the provisions of the chapter "regulating the responsiveness and effect of verdicts" apply to bench trials. The petitioner does not show how these provisions could amount to a requirement that the judge make any outward sign or take any action to reflect that he had considered the evidence before rendering a verdict. The petitioner does not demonstrate any grounds for an objection, and

---

[9] Once again the petitioner fails to brief this claim, but we address it through the briefing in his state application for post-conviction relief out of an abundance of caution.

cannot satisfy either of *Strickland*'s prongs based on trial counsel's failure to do so. Accordingly, he shows no error to the state court's ruling and no right to federal habeas relief.

### e. Cumulative error

Under *Strickland*, the court may also consider the cumulative prejudice from counsel's errors. *See Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (addressing each issue of deficient performance found by the district court before considering whether the petitioner was cumulatively prejudiced thereby); *see also Dodson v. Stephens*, 611 Fed. App'x 168, 178 (5th Cir. 2015) (assuming without deciding that *Strickland* calls for a cumulative prejudice analysis).

The petitioner has only shown one instance, under his jury trial waiver claim, where he might be able to demonstrate that counsel's performance was deficient. Under that claim, as we noted above, he would not be able to show any prejudice. Accordingly, he cannot show a right to relief under a theory of cumulative prejudice.

### 2. *Miller* claim

Finally, the petitioner claims that he is entitled to relief under *Miller v. Alabama*, 132 S.Ct. 2455 (2012), because he received a mandatory term of life imprisonment without parole for a crime he committed while still under the age of eighteen years old.[10]

After the plaintiff had exhausted this claim in the state courts, the Supreme Court held in *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), that *Miller*'s rule, that mandatory terms of life imprisonment without parole violate the Eighth Amendment when applied to juvenile offenders, is retroactively applicable on collateral review. Accordingly, and contrary to the Louisiana

---

[10] The petitioner contends that he was sixteen years old at the time of the offenses. Doc. 1, att. 2, p. 13. His exact age is not provided but the respondent does not contest this claim. We note that the Louisiana Supreme Court agreed, in ruling on this claim, that he was a juvenile at the time of the offense. *See* doc. 1, att. 6, p. 117. At the hearing on his motion to waive jury trial, which occurred nearly two years after the offenses, the petitioner stated that he was eighteen years old. Doc. 13, att. 3, p. 110.

Supreme Court's ruling, the sentence received by the petitioner for his first degree murder conviction is unconstitutional. He is therefore entitled to resentencing in the state court.

### D. Evidentiary Hearing

The petitioner also requests an evidentiary hearing in this court. Doc. 1, att. 2, p. 14. The decision of whether to conduct an evidentiary hearing on a § 2254 petition is committed to the discretion of the district court. *Barrientes v. Johnson*, 221 F.3d 741, 770 (5th Cir. 2000). In order to show entitlement to an evidentiary hearing, a petitioner must first overcome the restrictions of 28 U.S.C. § 2254(e)(2) and demonstrate that the failure to develop the claim at the state level is not the result of his own decision or omission, or that the claim falls under certain exceptions. *Robison v. Johnson*, 151 F.3d 256, 268 (5th Cir. 1998). However, making this showing "does not guarantee . . . an evidentiary hearing, it merely opens the door for one." *Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000). "[A] petitioner need not receive an evidentiary hearing if it would not develop material facts relevant to the constitutionality of his conviction." *Woodard v. Thaler*, 702 F.Supp.2d 738, 755 (S.D. Tex. 2010) (quoting *Young v. Herring*, 938 F.2d 543, 560 n. 12 (5th Cir. 1991)).

In this matter it is plain that the petitioner is not entitled to habeas relief on his ineffective assistance claims. The petitioner does not show any facts in dispute or in need of development that could alter our determination on this issue. Accordingly, he does not show a right to an evidentiary hearing and the request is denied.

### IV.
#### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant application be **GRANTED IN PART** as it relates to the second claim and that the case be remanded to the state

court for resentencing. The remaining claim, alleging ineffective assistance of counsel, should be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 10th day of August, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE